**NORTON ROSE FULBRIGHT US LLP**
JOSHUA D. LICHTMAN (BAR NO. 176143)
555 South Flower Street, Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9226
Facsimile: (213) 892-9494
joshua.lichtman@nortonrosefulbright.com

**NORTON ROSE FULBRIGHT US LLP**
JASON K. FAGELMAN (*Pro Hac Vice Application Forthcoming)*
JOSEPH E. SIMMONS (*Pro Hac Vice Application Forthcoming*)
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
jason.fagelman@nortonrosefulbright.com
joseph.simmons@nortonrosefulbright.com

Attorneys for Defendant TRIZETTO
PROVIDER SOLUTIONS, LLC

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY TAYLOR,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TRIZETTO PROVIDER SOLUTIONS, LLC, et al,<br><br>　　　　Defendants. | Case No. 2:26-cv-000086-DC-AC<br><br>**DEFENDANT TRIZETTO PROVIDER SOLUTIONS, LLC'S NOTICE OF MOTION AND MOTION TO TRANSFER PLAINTIFF'S COMPLAINT TO THE EASTERN DISTRICT OF MISSOURI; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Date:** May 15, 2026<br>**Time**: 1:30 p.m.<br>**Judge:** Dena Coggins<br>**Courtroom** 10 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 15, 2026, in Courtroom 10, of the above-captioned Court, located at Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, CA 95814, Defendant TriZetto Provider Solutions, LLC ("**TPS**") will and hereby does move to transfer Plaintiff's Complaint to the Eastern District of Missouri, Eastern Division, pursuant to 28 U.S.C. § 1404(a).

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all pleadings and papers on file in this action, and such other written or oral argument as may be properly presented to the Court at or before the hearing.

**Meet and Confer Certification:** the undersigned counsel for TPS hereby certifies that (1) counsel for TPS conferred on the substance of this motion with Plaintiff's counsel, Vess Miller, Esq., who indicated that Plaintiff opposes transfer to the Eastern District of Missouri, Eastern Division, but does not oppose transfer to the District of New Jersey; and (2) counsel for TPS conferred on the substance of this motion with counsel for Cares Community Health d/b/a One Community Health ("**OCH**"), Mindy Pava, Esq., who indicated that OCH consents to transfer to the Eastern District of Missouri, Eastern Division.

Respectfully Submitted,

Dated:        April 8, 2026        **NORTON ROSE FULBRIGHT US LLP**
JOSHUA D. LICHTMAN
JASON K. FAGELMAN
JOSEPH E. SIMMONS


By:  */s/ Joshua D. Lichtman*
JOSHUA D. LICHTMAN
Attorneys for Defendant
TRIZETTO PROVIDER SOLUTIONS
LLC

DOCUMENT PREPARED
ON RECYCLED PAPER

TPS'S NOTICE OF MOTION AND MOTION TO TRANSFER

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   <u>INTRODUCTION</u>

Pursuant to 28 U.S.C. § 1404(a), Defendant TriZetto Provider Solutions, LLC ("**TPS**") moves to transfer this case to the United States District Court of the Eastern District of Missouri, Eastern Division, where the first-filed action relating to the data incident at issue is pending.[1] Defendant Cares Community Health d/b/a One Community Health ("**OCH**") is unopposed to the transfer.

### II.   <u>BACKGROUND</u>

TPS is a healthcare information technology services provider with its principal place of business in Earth City, Missouri. Compl. ¶¶ 15, 19-20. OCH is a non-profit healthcare organization that allegedly made use of TPS's services. *Id.* ¶¶ 2-3. Plaintiff alleges that she is a patient of OCH, that she provided her personal information to OCH, and that she received a notice letter informing her of a data incident affecting TPS's systems that took place on or about October 2, 2025, allegedly resulting in the compromise of her personal information (the "**Incident**"). *Id.* ¶¶ 1, 4, 11. Plaintiff asserts various common law claims against TPS and OCH, and seeks to certify a nationwide class of individuals affected by the Incident, *id.* ¶ 97.

This action is not the first putative class action against TPS relating to the Incident. The first-filed such action, *Niessing v. TriZetto Provider Solutions, et al.*, No. 4:25-cv-01861, was filed in the Eastern District of Missouri on December 19, 2025. *See* Ex. A (*Niessing* complaint). Later-filed actions in the Eastern District of Missouri were subsequently consolidated into the first-filed *Niessing* action under the caption *In re TriZetto Provider Solutions Data Breach Security Litigation*. Like this action, the first-filed *Niessing* action alleges that the plaintiff provided personal information to a healthcare organization that made use of TPS's services, alleges that

---

[1] TPS does not waive, and expressly reserves, its right to seek dismissal under Rule 12(b)(2) on the basis that this Court lacks personal jurisdiction over it given its lack of relevant forum contacts. The Court can decide this § 1404 motion for venue transfer without first determining whether it has personal jurisdiction over TPS. *See, e.g.*, *Lozano v. Giovino,* 2015 WL 5023003, at *3 (E.D. Cal. Aug. 24, 2015).

DOCUMENT PREPARED
ON RECYCLED PAPER

the plaintiff's information was compromised in the Incident, asserts various common law claims including negligence, and seeks to certify a nationwide class of individuals allegedly affected by the Incident, Ex. A ¶ 143.

## III.   ARGUMENT

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of a change of venue under Section 1404 is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quotation omitted). In particular, "the well-established 'first to file rule' allows a district court to transfer . . . an action when a similar complaint has already been filed in another federal court." *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 623 (9th Cir. 1991).

To determine whether the first-filed rule applies, the court considers the "chronology of the lawsuits, similarity of the parties, and similarity of the issues." *Kohn Law Group, Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). This first-filed rule requires "only substantial similarity of parties," not identity. *Id.* "In a class action, the classes, and not the class representatives, are compared." *Ross v. U.S. Bank Nat. Ass'n*, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008). Given these well-established principles, the first-filed rule applies here. The *Niessing* action was filed on December 19, 2025, while this action was filed on January 12, 2026. Both actions involve a common defendant, TPS; the same proposed putative classes, *compare* Compl. ¶ 97, *with* Ex. A ¶ 143; and the same alleged Incident. Litigating in a single forum will be more cost effective and will foster judicial economy by permitting a single resolution to all related claims.

Although transfer under the first-filed rule is discretionary, it "should not be disregarded lightly." *Alltrade*, 946 F.2d at 625. Once the Court determines that the

DOCUMENT PREPARED
ON RECYCLED PAPER

- 4 -

requirements are satisfied, it should apply the first-filed rule unless circumstances warrant an equitable exception. *Alltrade*, 946 F.2d at 628. The Ninth Circuit has identified only three grounds for such an exception: "bad faith, anticipatory suit, and forum shopping." *Id.* Since each of these exceptions looks at the motives of "the party who filed the first-filed action," they cannot apply here, where TPS is defendant in both actions, not defendant in one and plaintiff in another. *Young v. L'Oreal USA, Inc.*, 526 F. Supp. 3d 700, 708 (N.D. Cal. 2021).

The Ninth Circuit has made clear that courts should not decline to apply the first-filed rule on grounds of inconvenience because any forum non conveniens argument "should be addressed to the court in the first-filed action," not to the court of the later-filed action. *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982). But even if the Court were to consider convenience, it weighs in favor of transfer to the Eastern District of Missouri, Eastern Division. Even Plaintiff does not dispute that transfer is appropriate; rather, she simply prefers transfer to the District of New Jersey.[2] But the convenience of parties and witnesses and the interests of justice favor the Eastern District of Missouri, Eastern Division, where (i) OCH has consented to transfer, (ii) TPS has its principal place of business, and (iii) this action can be efficiently consolidated into the first-filed *Niessing* action. Plaintiff's contrary preference "is given less weight" when, as here, the complaint is a putative class action. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). Further, Plaintiff has not and cannot show that the District of New Jersey would have personal jurisdiction over either defendant, let alone that venue would be proper there. *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960); *A.J. Indus., Inc. v. United States Dist. Ct. for the Cent. Dist. of Cal.*, 503 F.2d 384, 386 (9th Cir. 1974). Particularly given the circumstances here, Plaintiff's bare preference for a different forum cannot override the first-filed rule.

This action should therefore be transferred to the Eastern District of Missouri,

---

[2] Certain later-filed actions against TPS relating to the Incident are pending in that District.

TPS'S NOTICE OF MOTION AND MOTION TO TRANSFER

DOCUMENT PREPARED ON RECYCLED PAPER

Eastern Division, where the first-filed *Niessing* action is pending and has been consolidated into the *In re TriZetto Provider Solutions Data Breach Security Litigation* action.

## IV.    CONCLUSION

For the reasons stated herein, TPS requests that this Court order this action transferred to the United States District Court for the Eastern District of Missouri, Eastern Division.

Respectfully Submitted,

Dated:        April 8, 2026        **NORTON ROSE FULBRIGHT US LLP**
JOSHUA D. LICHTMAN
JASON K. FAGELMAN
JOSEPH E. SIMMONS


By:  */s/ Joshua D. Lichtman*
JOSHUA D. LICHTMAN
Attorneys for Defendant
TRIZETTO PROVIDER SOLUTIONS
LLC

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| RAYMOND NIESSING, on behalf of himself and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>TRIZETTO PROVIDER SOLUTIONS and COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION,<br><br>   Defendants. | Case No.<br><br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Raymond Niessing ("Plaintiff"), individually and on behalf of all other similarly situated individuals (the "Class" or "Class Members," as defined below), by and through his undersigned counsel, files this Class Action Complaint against Defendants TriZetto Provider Solutions ("TriZetto") and Gognizant Technology Solutions Corporation ("Cognizant") (together, "Defendants") and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following based on personal knowledge of facts, upon information and belief, and based on the investigation of his counsel as to all other matters.

1

## I.    NATURE OF THE ACTION

1.    Plaintiff brings this class action lawsuit against Defendants for their negligent failure to protect and safeguard Plaintiff's and Class Members' (highly sensitive personally identifiable information ("PII") and protected health information ("PHI") (together, "Private Information"), culminating in a massive and preventable data breach (the "Data Breach" or "Breach"). As a result of Defendants' negligence and deficient data security practices, cybercriminals easily infiltrated Defendants' inadequately protected computer systems and **stole** the Private Information of Plaintiff and Class Members.

2.    Defendant TriZetto, headquartered in Earth City, Missouri, is a healthcare technology firm that provides management services, including care management, patient engagement, and analytics to numerous healthcare organizations in the U.S. including Blue Cross Blue Shield of Rhode Island.[1] TriZetto claims that it aims to create a patient-focused environment that is interconnected, streamlined and efficient.[2]

3.    In 2014, TriZetto was acquired by Defendant Cognizant.[3]

4.    Defendants received Plaintiff and Class Members' Private Information in the ordinary course of their business practices.

---

[1] TriZetto Provider Solutions, *Who We Are*, https://www.trizettoprovider.com/who-we-are/our-story (last visited Dec. 18, 2025); Radiology Business, Two BlueCross plans select TriZetto's claims software, https://radiologybusiness.com/topics/healthcare-management/medical-practice-management/two-bluecross-plans-select-trizettos-claims-software (last visited Dec. 17, 2025)
[2] https://www.trizettoprovider.com/who-we-serve/physician-practices (last visited Dec. 18, 2025).
[3] TriZetto Provider Solutions, *Who We Are*, https://www.trizettoprovider.com/who-we-are/our-story (last visited Dec. 18, 2025).

5.     By obtaining, collecting, and using and deriving a benefit from the Private Information of Plaintiff and Class Members, Defendants assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion.

6.     Defendants had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on their affirmative representations to Plaintiff and Class Members, to keep their Private Information confidential, safe, secure, and protected from unauthorized disclosure or access.

7.     On or around November 2024, an unauthorized third party accessed TriZetto's network systems and accessed protected Private Information.[4]

8.     On or around October 2, 2025, TriZetto identified that unauthorized third parties infiltrated TriZetto's network systems which resulted in the access of protected Private Information—almost a year after the Breach occurred.[5]

9.     Upon information and belief, the stolen information included one or more of the following: patient names, addresses, dates of birth, Social Security number, health insurance information, health insurance member number, information about the primary insured or beneficiary, and other demographic and health information.[6]

---

[4] Steve Adler, *TriZetto Provider Solutions Notifies Healthcare Provider Clients About Data Breach*, THE HIPPA JOURNAL (Dec. 11, 2025), http://www.hipaajournal.com/trizetto-providersolutions-data-breach/.
[5] *Id.*
[6] *Id.*

10.     To date, there is no indication that Defendants have notified affected individuals of the Data Breach.

11.     Defendants failed to adequately protect Plaintiff's and Class Members' Private Information—and failed to even encrypt or redact this highly sensitive information. This unencrypted, unredacted Private Information was compromised due to Defendants' negligent and/or careless acts and omissions and its utter failure to protect patients' sensitive data. Hackers targeted and obtained Plaintiff's and Class Members' Private Information because of its value in exploiting and stealing the identities of Plaintiff and Class Members. The present and continuing risk to victims of the Data Breach will remain for their respective lifetimes.

12.     The sensitive nature of the data exposed through the Data Breach signifies that Plaintiff and Class Members have suffered irreparable harm. Plaintiff and Class Members have lost the ability to control their private information and are subject to an increased risk of identity theft.

13.     Due to Defendants' negligent failure to secure and protect Plaintiff's and Class Members' Private Information, cybercriminals have stolen and obtained everything they need to commit identity theft and wreak havoc on the financial and personal lives of millions of individuals.

14.     Now, and for the rest of their lives, Plaintiff and the Class Members will have to deal with the danger of identity thieves possessing and misusing their Private Information. Even those Class Members who have yet to experience identity theft will have

4

to spend time responding to the Data Breach and are at an immediate and heightened risk of all manners of identity theft as a direct and proximate result of the Data Breach.

15. Plaintiff and Class Members have incurred and will continue to incur damages in the form of, among other things, identity theft, attempted identity theft, lost time and expenses mitigating harms, increased risk of harm, damaged credit, diminution of the value of their Private Information, loss of privacy, and additional damages as described below.

16. Defendants disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to implement and maintain adequate and reasonable measures to ensure that the Private Information of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use. As a result, the Private Information of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party.

17. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

18. Plaintiff brings this action individually and on behalf of the Class, seeking compensatory damages, punitive damages, nominal damages, restitution, injunctive and

declaratory relief, reasonable attorneys' fees and costs, and all other remedies this Court deems just and proper.

## II.   THE PARTIES

19.   Plaintiff **Raymond Niessing** is an individual domiciled in Westerly, Rhode Island. Plaintiff Niessing is a customer of Blue Cross Blue Shield Rhode Island. Upon information and belief, Plaintiff Niessing's Private Information was compromised in TriZetto's Breach and is therefore a victim of the Breach.

20.   Defendant **TriZetto Provider Solutions** is a corporation with its headquarters located at 3300 Rider Trail S. Earth City, Missouri 63045. TriZetto's service agent is CSC and may be served at 221 Bolivar street, Jefferson City, MO 65101.

21.   Defendant **Cognizant Technology Solutions Corporation** is a Delaware corporation headquartered in Teaneck, New Jersey. Cognizant's service agent is CSC and may be served at 251 Little Falls Drive, Wilmington, Delaware 19808.

## III.   JURISDICTION AND VENUE

22.   This Court has subject matter jurisdiction over this action under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs. Upon information and belief, the number of Class Members is more than 100, many of whom have different citizenship from Defendants. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

23.   This Court has personal jurisdiction over Defendants because Defendant TriZetto is headquartered in this District, regularly conducts business in this District, and

Defendants have sufficient minimum contact in this District.

24.     Venue is proper in this Court because Cognizant owns TriZetto and Defendant TriZetto's principal place of business is located in this District, and a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## IV.     FACTUAL ALLEGATIONS

**A.     Defendants Collected Plaintiff's and Class Members' Private Information.**

25.     Defendant TriZetto is for-profit healthcare technology company in Earth City, Missouri that provides management services to healthcare providers and businesses across the country.

26.     TriZetto employs more than 200 people and generates approximately 82 million dollars in annual revenue.[7]

27.     Cognizant acquired TriZetto in 2014.[8]

28.     Plaintiff provided his Private Information to Defendant in collection with healthcare services provided by Blue Cross Blue Shield Rhode Island.

29.     As a condition of doing business, Defendant TriZetto requires that its Clients—physicians and medical agencies—entrust it with highly sensitive personal and health information belonging to their patients. In the ordinary course of receiving service

---

[7] *TriZetto Provider Solutions*, ZOOMINFO, http://www.zoominfo.com/c/trizetto-provider-solutionsllc/507406020 (last visited Dec. 18, 2025).
[8] TriZetto Provider Solutions, *Who We Are*, https://www.trizettoprovider.com/who-we-are/our-story (last visited Dec. 18, 2025).

from Defendants' Clients, Plaintiff and Class Members were required to provide their Private Information to Defendant.

30. The information held by Defendant TriZetto at the time of the Data Breach included the unencrypted Private Information of Plaintiff and Class Members.

31. Upon information and belief, TriZetto made promises and representations to individuals that the Private Information collected from them would be kept safe and confidential, and that the privacy of that information would be maintained, and Defendant would delete any sensitive information after it was no longer required to maintain it, including through its privacy policies.

32. Plaintiff and Class Members provided their Private Information to TriZetto, through their medical providers and insurance companies, with the reasonable expectation and on the mutual understanding that Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access.

33. As a result of collecting and storing the Private Information of Plaintiff and Class Members for its own financial benefit, Defendants had a continuous duty to adopt and employ reasonable measures to protect Plaintiff and the Class Members' Private Information from disclosure to third parties

34. By obtaining, collecting, using, and deriving a benefit from Plaintiff' and Class Members' Private Information, Defendants assumed legal and equitable duties and knew or should have known they were responsible for protecting Plaintiff' and Class Members' Private Information from unauthorized disclosure.

35. Defendants had a duty to adopt reasonable measures to protect the Private Information of Plaintiff and Class members from involuntary disclosure to third parties. Defendants have a legal duty to keep Plaintiff's and Class members' Private Information safe and confidential.

36. Defendants had obligations under the FTC Act and HIPAA, contract, industry standards, and representations made to Plaintiff and Class members, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

37. Defendants derived a substantial economic benefit from collecting Plaintiff' and Class members' Private Information. Without the required submission of Private Information, Defendant could not provide its services.

38. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiff and Class Members value the confidentiality of their Private Information and demand security to safeguard their Private Information.

**B.      The Data Breach**

39. On or around November 2024, unidentified third parties infiltrated TriZetto's network systems which resulted in the access of protected Private Information of Plaintiff and Class Members.[9]

40. TriZetto identified the unauthorized access of its network systems on

---

[9] Steve Adler, *TriZetto Provider Solutions Notifies Healthcare Provider Clients About Data Breach*, THE HIPPA JOURNAL (Dec. 11, 2025), http://www.hipaajournal.com/trizetto-providersolutions-data-breach/ (last visited Dec. 18, 2025).

October 2, 2025, almost a year after the Breach occurred.[10] Indeed, Defendants failed to identify the breach in a timely manner sufficient to alert victims that their Private Information have been compromised.

41. Defendants failed to use reasonable security procedures and practices appropriate to the nature of the sensitive Private Information they were maintaining for Plaintiff and Class Members, causing the devastating exposure of their Private Information.

42. The cybercriminals accessed and acquired files containing unencrypted Private Information of Plaintiff and Class Members. Plaintiff's and Class Members' Private Information was accessed and stolen in the Breach.

43. Losing these types of medical records poses a significant risk to the individuals involved. Most obviously, attackers can attempt to use names, addresses, and other data point for identity theft by setting up fraudulent accounts.

44. Plaintiff further believe his Private Information, and that of Class members, was subsequently sold on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type.

45. Upon information and belief, Defendants have not notified affected individuals of the Breach.

46. Defendants' actions represent a flagrant disregard of the rights of Plaintiff and the Class, both as to privacy and property.

47. As such, Plaintiff and the Class continue to be at an imminent and impending

---

[10] *Id.*

risk of identity theft and fraud.

**C.    Cyber Criminals Will Use Plaintiff's and Class Members' Private Information to Defraud them.**

48.    Private Information is of great value to hackers and cybercriminals, and the data stolen in the Data Breach can and will be used in a variety of ways by criminals to exploit Plaintiff and Class Members and to profit off their misfortune.

49.    Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[11]

50.    For example, with the Private Information stolen in the Data Breach, including Social Security numbers, identity thieves can open financial accounts, apply for credit, obtain medical services, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[12]

51.    These criminal activities have and will result in devastating financial and personal losses to Plaintiff and Class Members.

52.    Medical-related identity theft is one of the most common, most expensive, and most difficult to prevent forms of identity theft. According to Kaiser Health News,

---

[11] *Facts + Statistics: Identity Theft and Cybercrime*, INSURANCE INFO. INST., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (last visited April 11, 2024).
[12] *See, e.g.*, Nikkita Walker, *What Can You Do With Your Social Security Number*, CREDIT.COM (Oct. 19, 2023), https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

"medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013[,]" which is more than identity thefts involving banking and finance, the government and the military, or education.[13]

53.    "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place."[14] A complete identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market.[15]

54.    When cybercriminals manage to steal health insurance information and other personally sensitive data—as they did here—there is no limit to the amount of fraud to which Plaintiff and Class Members are exposed.

55.    Social Security numbers are particularly sensitive pieces of personal information. As the Consumer Federation of America explains:

> **Social Security number.** *This is the most dangerous type of personal information in the hands of identity thieves* because it can open the gate to serious fraud, from obtaining credit in your name to impersonating you to get medical services, government benefits, your tax refunds, employment – even using your identity in bankruptcy and other legal matters. It's

---

[13] Michael Ollove, *The Rise of Medical Identity Theft in Healthcare*, KAISER HEALTH NEWS (Feb. 7, 2014), https://khn.org/news/rise-of-indentity-theft/.

[14] *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows*, IDX (May 14, 2015) https://www.idx.us/knowledge-center/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat..

[15] *Managing cyber risks in an interconnected world: Key findings from The Global State of Information Security Survey 2015*, PRICEWATERHOUSECOOPERS (Sept. 30, 2014), https://www.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-global-state-of-information-security-survey-2015.pdf.

> hard to change your Social Security number and it's not a good
> idea because it is connected to your life in so many ways.[16]

(Emphasis added).

56.     PII is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it for years.[17]

57.     The Data Breach at issue here was targeted and financially motivated, as the only reason cybercriminals go through the trouble of hacking entities like Defendant TriZetto is to steal the highly sensitive information they maintain, which can be exploited and sold for use in the kinds of criminal activity described herein.

58.     A Social Security number, date of birth, and full name can sell for $60 to $80 on the digital black market.[18]

59.     PHI is even more valuable on the black market than PII.[19]

60.     According to the Center for Internet Security, "[t]he average cost of a data breach incurred by a non-healthcare related agency, per stolen record, is $158. For healthcare agencies the cost is an average of $355. Credit card information and PII sell for

---

[16] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/.

[17] *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (July 5, 2007), https://www.gao.gov/products/gao-07-737.

[18] Michael Kan, *Here's How Much Your Identity Goes for on the Dark Web*, PGMAG (Nov. 15, 2017), https://www.pcmag.com/news/heres-how-much-your-identity-goes-for-on-the-dark-web.

[19] *Data Breaches: In the Healthcare Sector*, CENTER FOR INTERNET SECURITY, https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector (last visited April 11, 2024).

$1-$2 on the black market, but PHI can sell for as much as $363 according to the Infosec Institute. This is because one's personal health history, including ailments, illnesses, surgeries, etc., can't be changed, unlike credit card information or Social Security Numbers."[20]

61.     "PHI is valuable because criminals can use it to target victims with frauds and scams that take advantage of the victim's medical conditions or victim settlements. It can also be used to create fake insurance claims, allowing for the purchase and resale of medical equipment. Some criminals use PHI to illegally gain access to prescriptions for their own use or resale."[21]

62.     Identity theft experts advise victims of data breaches: "[I]f there is reason to believe that your personal information has been stolen, you should assume that it can end up for sale on the dark web."[22]

63.     These risks are both certainly impending and substantial. As the Federal Trade Commission ("FTC") has reported, if hackers get access to PII, **they will use it**.[23]

---

[20] *Id.*

[21] *Id.*

[22] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/.

[23] Ari Lazarus, *How fast will identity thieves use stolen info?*, MILITARY CONSUMER (May 24, 2017), https://www.militaryconsumer.gov/blog/how-fast-will-identity-thieves-use-stolen-info.

64. Hackers may not use the information right away, but this does not mean it will not be used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information **may continue for years**. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[24]

65. For instance, with a stolen Social Security number, which is part of the Private Information compromised in the Data Breach, criminals can open financial accounts, get medical care, file fraudulent tax returns, commit crimes, and steal benefits.[25]

66. Identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit as well as protecting themselves in the future.[26]

67. The unfortunate truth is the full scope of the harm has yet to be realized. There may be a time lag between when harm occurs and when it is discovered, and also between when Private Information is stolen and when it is used.

68. Plaintiff and Class Members will need to pay for their own identity theft protection and credit monitoring for the rest of their lives due to Defendants' negligence.

---

[24] *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (July 5, 2007), https://www.gao.gov/products/gao-07-737 (emphasis added).
[25] *See* Nikkita Walker, *What Can Someone Do with Your Social Security Number?*, CREDIT.COM (Oct. 19, 2023), https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.
[26] *Guide for Assisting Identity Theft Victims*, FEDERAL TRADE COMMISSION (Sept. 2013), https://www.global-screeningsolutions.com/Guide-for-Assisting-ID-Theft-Victims.pdf.

69.     Furthermore, identity monitoring services only alert someone to the fact that they have already been the victim of identity theft—it does not prevent identity theft.[27]

70.     Nor can an identity monitoring service remove personal information from the dark web.[28]

71.     "The people who trade in stolen personal information [on the dark web] won't cooperate with an identity theft service or anyone else, so it's impossible to get the information removed, stop its sale, or prevent someone who buys it from using it."[29]

72.     As a direct and proximate result of the Data Breach, Plaintiff and the Class have been damaged and placed at an imminent and continuing increased risk of harm from fraud and identity theft. Plaintiff and the Class must now take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and medical records for unauthorized activity for years to come.

73.     Even more serious is the identity restoration that Plaintiff and other Class Members must go through, which can require spending countless hours filing police

---

[27] *See* Kayleigh Kulp, *Credit monitoring services may not be worth the cost*, CNBC (Nov. 30, 2017, 9:00 AM), https://www.cnbc.com/2017/11/29/credit-monitoring-services-may-not-be-worth-the-cost.html.

[28] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/.

[29] *Id.*

16

reports, filling out IRS forms, completing Federal Trade Commission checklists and Department of Motor Vehicle driver's license replacement applications, and calling financial institutions to cancel fraudulent credit applications, to name just a few of the steps Plaintiff and the Class must take.

74.    Plaintiff and the Class have or will experience the following concrete and particularized harms for which they are entitled to compensation, including:

   a.  Actual identity theft;

   b.  Trespass, damage to, and theft of their personal property, including their Private Information;

   c.  Improper disclosure and theft of their Private Information;

   d.  The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Private Information being placed in the hands of criminals;

   e.  Loss of privacy suffered as a result of the Data Breach, including the harm of knowing cybercriminals have their Private Information;

   f.  Ascertainable losses in the form of time taken to respond to identity theft, including lost opportunities and lost wages from uncompensated time off from work;

   g.  Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach;

h. Ascertainable losses in the form of diminution of the value of Plaintiff' and Class Members' Private Information, for which there is a well-established and quantifiable national and international market;

i. The loss of use of and access to their credit, accounts, and/or funds;

j. Damage to their credit due to fraudulent use of their Private Information; and/or

k. Increased cost of borrowing, insurance, deposits, and the inability to secure more favorable interest rates because of a reduced credit score.

75. Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which remains in the possession of Defendant TriZetto, is protected from further breaches through the implementation of industry standard security measures and safeguards. Defendant TriZetto has shown itself wholly incapable of protecting Plaintiff' and Class Members' Private Information.

76. Plaintiff and Class Members also have an interest in ensuring that their Private Information is removed from all Defendant TriZetto's servers, systems, and files.

77. Plaintiff and Class Members are desperately trying to mitigate the damages Defendant TriZetto caused them.

78. Given the kind of Private Information Defendant TriZetto made accessible to hackers, however, Plaintiff is certain to incur additional damages. Because identity thieves have their Private Information, Plaintiff and Class Members will need to have identity theft monitoring protection for the rest of their lives. Some may even need to go

through the long and arduous process of getting a new Social Security number, with all the loss of credit and employment difficulties that come with a new number.[30]

79.     None of this should have happened because the Data Breach was entirely preventable.

**D.     Defendant TriZetto was Aware of the Risk of Cyberattacks.**

80.     According to the Center for Internet Security, "the health industry experiences more data breaches than any other sector."[31] This is because "Personal Health Information (PHI) is more valuable on the black market than credit card credentials or regular Personally Identifiable Information (PII). Therefore, there is a higher incentive for cyber criminals to target medical databases. They can sell the PHI and/or use it for their own personal gain."[32]

81.     "In 2023, more than 540 organizations and 112 million individuals were implicated in healthcare data breaches reported to the HHS Office for Civil Rights (OCR), compared to 590 organizations and 48.6 million impacted individuals in 2022."[33]

82.     "The number of cybersecurity attacks disrupting the healthcare sector has continued to be a growing concern. In the last three years, more than 90% of all healthcare

---

[30] *What happens if I change my Social Security number?*, LEXINGTON LAW (Aug. 10, 2022),           https://www.lexingtonlaw.com/blog/credit-101/will-a-new-social-security-number-affect-your-credit.html.

[31] *Data Breaches: In the Healthcare Sector*, CENTER FOR INTERNET SECURITY, https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector           (last visited April 11, 2024).

[32] *Id.*

[33] *This Year's Largest Healthcare Data Breaches*, HEALTH IT SECURITY (Dec. 26, 2023), https://healthitsecurity.com/features/this-years-largest-healthcare-data-breaches.

organizations have reported at least one security breach which can manifest in denial of service, malicious code, ransomed data, and more."[34]

83.     "Healthcare organi[z]ations are rich targets for cybercriminals because they hold a large amount of sensitive patient data. This data can be used to commit identity theft or fraud or sold on the black market. Hackers can access this data in many ways, including phishing emails, malware, and unsecured networks."[35]

84.     It is no secret that "[h]ealthcare data breaches are reaching record highs. Indeed, healthcare now sees more cyberattacks than any other industry. Fully one-third of all cyberattacks are aimed at healthcare institutions. Why? Because healthcare is a valuable and vulnerable target. Hospitals and healthcare institutions are a prime target for cybercrime due to the vast amount of sensitive data they hold."[36]

85.     The health industry is frequently recognized as one of the most vulnerable industries for a cyberattack.[37]

---

[34] *6 Industries Most Vulnerable to Cyber Attacks*, WGU (Aug. 3, 2021), https://www.wgu.edu/blog/6-industries-most-vulnerable-cyber-attacks2108.html.

[35] Troy Beamer, *What Industries Are Most Vulnerable to Cyber Attacks In 2024?*, TECHNEWS (Feb. 27, 2024), https://www.techbusinessnews.com.au/what-industries-are-most-vulnerable-to-cyberattacks-in-2022/.

[36] *What Industries Are Most Vulnerable to Cyberattacks?*, PSM, https://www.psmpartners.com/blog/most-targeted-industries-for-cyber-attacks/

[37] *See, e.g.*, *id.*; Liudmyla Pryimenko, *The 7 Industries Most Vulnerable to Cyberattacks*, EKRAN (Mar. 25, 2024), https://www.ekransystem.com/en/blog/5-industries-most-risk-of-data-breaches; Ani Petrosyan, *Distribution of cyberattacks across worldwide industries in 2023*, STATISTA (Mar. 22, 2024), https://www.statista.com/statistics/1315805/cyber-attacks-top-industries-worldwide/; *6 Industries Most Vulnerable to Cyber Attacks*, WGU (Aug. 3, 2021), https://www.wgu.edu/blog/6-industries-most-vulnerable-cyber-attacks2108.html.

86.     Defendant TriZetto should have been aware, and indeed was aware, that it was at risk of a data breach that could expose the Private Information that it solicited, collected, stored, and maintained, especially given the rise of healthcare data breaches.

87.     Defendant TriZetto's assurances to Clients that it maintains high standards of cybersecurity are further evidence that Defendant TriZetto recognized it had a duty to use reasonable measures to protect the Private Information that it solicited, collected, and maintained.

88.     Defendant TriZetto was aware of the risks and harm that could result from inadequate data security.

**E.     Defendant TriZetto Failed to Comply with FTC Guidelines and Industry Standards.**

89.     Data breaches are preventable.[38] "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[39] "Organizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised[.]"[40]

90.     Most reported data breaches "are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures. . . . Appropriate

---

[38] Lucy L. Thomson, *Despite the Alarming Trends, Data Breaches Are Preventable*, DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012), available at https://lawcat.berkeley.edu/record/394088.
[39] *Id.* at 17.
[40] *Id.* at 28.

information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[41]

91.     Here, many failures laid the groundwork for the Data Breach.

92.     The FTC has published guidelines that establish reasonable data security practices for businesses.[42]

93.     The FTC guidelines emphasize the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.[43]

94.     The FTC guidelines establish that businesses should protect the confidential information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems.[44]

95.     The FTC guidelines also recommend that businesses utilize an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating hacking attempts; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[45]

---

[41] *Id.*

[42] *Protecting Personal Information: A Guide for Business*, FTC (Oct. 2016), available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

[43] *Id.*

[44] *Id.*

[45] *Id.*

96. According to information and belief, Defendant TriZetto failed to follow reasonable and necessary industry standards to prevent the Data Breach, including the FTC's guidelines.

97. Based on allowing its security certificates to lapse and upon information and belief, Defendant TriZetto also failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework, NIST Special Publications 800-53, 53A, or 800-171; the Federal Risk and Authorization Management Program (FEDRAMP); or the Center for Internet Security's Critical Security Controls (CIS CSC), which are well respected authorities in cybersecurity readiness.

98. As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[46]

99. To prevent and detect the attack here, Defendant TriZetto could and should have taken, as recommended by the Federal Bureau of Investigation, the following measures:

- Implemented an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

---

[46] *See How to Protect Your Networks from RANSOMWARE*, at 3, available at https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view.

- Enabled strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scanned all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configured firewalls to block access to known malicious IP addresses.

- Patched operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Managed the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configured access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disabled macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implemented Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Considered disabling Remote Desktop protocol (RDP) if it is not being used.

- Used application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Executed operating system environments or specific programs in a virtualized environment.

- Categorized data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[47]

100.    According to information and belief, Defendant TriZetto failed to do any of the above.

---

[47] *Id.* at 3–4.

101. To prevent and detect ransomware attacks, Defendant TriZetto could and should have recommended its employees, as recommended by the United States Cybersecurity & Infrastructure Security Agency, take the following measures:

- **Updated and patched your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks.

- **Used caution with links and when entering website addresses**. Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net).

- **Opened email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Kept your personal information safe**. Check a website's security to ensure the information you submit is encrypted before you provide it.

- **Verified email senders**. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Used and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic.[48]

102.    In addition, to prevent and detect the Data Breach, including the Breach that resulted in the Data Breach, Defendant TriZetto could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

---

[48] *See Protecting Against Ransomware*, CYBERSECURITY & INFRASTRUCTURE SECURITY AGENCY (revised Sept. 2, 2021), https://www.cisa.gov/news-events/news/protecting-against-ransomware (internal citations omitted).

- **Harden internet-facing assets**

  - Apply latest security updates

  - Use threat and vulnerability management

  - Perform regular audits

- **Thoroughly investigate and remediate alerts.**

  - Prioritize and treat commodity malware infections as potential full compromise of the system

- **Include IT professionals in security discussions.**

  - Ensure collaboration among security operations, security administrators, and information technology administrators to configure servers and other endpoints securely

- **Build and maintain credential hygiene**

  - Use multifactor authentication or network level authentication and enforce strong, randomized, just-in-time local administrator passwords

- **Apply principle of least-privilege**

  - Monitor for adversarial activities

  - Hunt for brute force attempts

  - Monitor for cleanup of Event Logs

  - Analyze logon events

- **Harden infrastructure**

- Utilize Windows Defender Firewall

- Enable tamper protection

- Enable cloud-delivered protection

- Turn on attack surface reduction rules and Antimalware Scan Interface for Office Visual Basic for Applications[49]

103.   Given that Defendant TriZetto was storing the Private Information of millions of individuals, Defendant TriZetto could and should have implemented all of the above measures to prevent and detect cyberattacks.

104.   Specifically, among other failures, Defendant TriZetto had far too much confidential unencrypted information held on its systems. Such Private Information should have been segregated into an encrypted system.[50]

105.   Moreover, it is well-established industry standard practice for a business to dispose of confidential Private Information once it is no longer needed.[51]

106.   The FTC has repeatedly emphasized the importance of disposing of unnecessary Private Information: "Keep sensitive data in your system only as long as you

---

[49] *See Human-operated ransomware attacks: A preventable disaster*, MICROSOFT THREAT INTELLIGENCE (Mar 5, 2020), https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/.

[50] *See* Adnan Raja, *How to Safeguard Your Business Data With Encryption*, DATAINSIDER (Aug. 14, 2018), https://digitalguardian.com/blog/how-safeguard-your-business-data-encryption.

[51] *See Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business.

have a business reason to have it. Once that business need is over, properly dispose of it. If it's not on your system, it can't be stolen by hackers."[52] Rather than following this basic standard of care, Defendant TriZetto kept millions of individuals' unencrypted Private Information on their inadequately secured systems indefinitely.

107.   In sum, the Data Breach could have been easily prevented through standard practices like the use of industry standard network segmentation and encryption of all Private Information—which Defendant TriZetto negligently failed to do.

108.   Further, the scope of the Data Breach could have been dramatically reduced had Defendant TriZetto utilized proper record retention and destruction practices—but Defendant TriZetto negligently did no such thing.

### F.  Defendant TriZetto Failed to Comply with HIPAA Under the Law and the Applicable Standards of Care.

109.   As the custodian of healthcare records handling medical patient data and providing services to hospitals and healthcare organizations, Defendant TriZetto is a covered entity under HIPAA (45 C.F.R. § 160.103). As such, Defendant TriZetto is required to comply with the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and the HIPAA Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and C ("Security Standards for the Protection of Electronic Protected Health Information").

---

[52] *Id.* at 6.

110. HIPAA's Privacy Rule establishes national standards for protecting health information, including health information that is kept or transferred in electronic form.

111. Defendant TriZetto is required to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

112. "Electronic protected health information" is "individually identifiable health information . . . that is: (i) transmitted by electronic media; [or] (ii) maintained in electronic media[.]" 45 C.F.R. § 160.103.

113. The HIPAA Security Rule, 45 C.F.R. Part 164, Subpart C, requires Defendant TriZetto to:

   a. Ensure the confidentiality, integrity, and availability of all electronic protected health information it or any business associate creates, receives, maintains, or transmits;

   b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

   c. Protect against any reasonably anticipated uses or disclosures of such information; and

   d. Ensure compliance by its workforce.

114. HIPAA also requires Defendant TriZetto to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information[.]" 45 C.F.R. § 164.306(e).

115. Additionally, HIPAA requires Defendant TriZetto to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights[.]" 45 C.F.R. § 164.312(a)(1).

116. The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, further requires Defendant TriZetto to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of [the] breach[.]" Upon information and belief, Defendant TriZetto has not provided notice of the Breach to affected individuals including Plaintiff and Class Members.

117. Defendant TriZetto was also prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 (the "FTC Act"), from engaging in "unfair or deceptive acts or practices in or affecting commerce[.]" The FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

118. Defendant TriZetto is further required by various states' laws and regulations to protect Plaintiff' and Class Members' Private Information.

119. Defendants owed a duty to Plaintiff and the Class to design, maintain, and test its computer and email systems to ensure that the Private Information in its possession and control was adequately secured and protected.

120.   Defendants owed a duty to Plaintiff and the Class to create and implement reasonable data security practices and procedures to protect the Private Information in its possession, including adequately training its employees (and any others who accessed Private Information within its computer systems) on how to adequately protect Private Information.

121.   Defendants owed a duty to Plaintiff and the Class to implement processes that would detect a breach of its data security systems in a timely manner.

122.   Defendants owed a duty to Plaintiff and the Class to act upon data security warnings and alerts in a timely fashion.

123.   Defendants owed a duty to Plaintiff and the Class to adequately train and supervise its employees to identify and avoid any phishing emails that make it past its email filtering service.

124.   Defendants owed a duty to Plaintiff and the Class to disclose if their computer systems and data security practices were inadequate to safeguard individuals' Private Information from theft because such an inadequacy would be a material fact in individuals' decisions to entrust Defendant with their Private Information.

125.   Defendants owed a duty to Plaintiff and the Class to disclose in a timely and accurate manner when data breaches occurred.

126.   Defendants owed a duty of care to Plaintiff and the Class because they were foreseeable and probable victims of any inadequate data security practices.

127. Defendants beached the duties owed to Plaintiff and the Class and the Breach is the proximate cause of Plaintiff's and Class Members' injuries.

### G. Plaintiff's Individual Experience

#### i. *Plaintiff Raymond Niessing*

128. Plaintiff Niessing is a customer of Blue Cross Blue Shield Rhode Island.

129. Upon information and belief, Defendant TriZetto received, stored, and managed the sensitive personal and medical health information of Plaintiff as a healthcare technology firm that provides management services to medical agencies including Blue Cross Blue Shield Rhode Island.

130. Plaintiff Niessing entrusted his Private Information to Defendant TriZetto as the record custodian of his Private Information through Blue Cross Blue Shield Rhode Island with the reasonable expectation and mutual understanding that Defendant TriZetto would keep his Private Information secure from unauthorized access.

131. By soliciting and accepting Plaintiff Niessing's Private Information, Defendants agreed to safeguard and protect it from unauthorized access and delete it after a reasonable time.

132. Upon information and belief, Defendants were in possession of Plaintiff Niessing's Private Information before, during, and after the Data Breach.

133. Upon information and belief, Plaintiff Niessing is a victim of the Data Breach.

134. Following the Data Breach, Plaintiff Niessing made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to researching the Data

Breach, reviewing and monitoring his accounts for fraudulent activity, and reviewing his credit reports. Plaintiff Niessing has spent hours responding to the Data Breach.

135. As a result of the Data Breach, and upon information and belief, Plaintiff Niessing has noticed an increase in spam phone calls, texts, and emails which he did not receive prior to the Breach.

136. Plaintiff Niessing will be forced to spend additional time reviewing his credit reports and monitoring his accounts for the rest of his life. This is time which has been lost forever and cannot be recaptured.

137. Plaintiff Niessing places significant value in the security of his Private Information and does not readily disclose it. Plaintiff Niessing entrusted Defendants with his Private Information with the understanding that Defendants would keep his information secure and would employ reasonable and adequate data security measures to ensure that his Private Information would not be compromised.

138. Plaintiff Niessing has never knowingly transmitted unencrypted Private Information over the internet or any other unsecured source.

139. As a direct and traceable result of the Data Breach, Plaintiff Niessing suffered actual injury and damages after his Private Information was compromised and stolen in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring his accounts and credit reports for fraudulent activity; (b) loss of privacy due to his Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of his bargain because Defendants did not adequately protect his Private Information; (d)

emotional distress because identity thieves now possess his first and last name paired with his Social Security number and other sensitive information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that his Private Information has been stolen and published on the dark web; (f) diminution in the value of his Private Information, a form of intangible property that Defendants obtained from Plaintiff Niessing and/or his medical providers; and (g) other economic and non-economic harm.

140.   Plaintiff Niessing has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for *years* to come. This risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the Private Information stolen in the Data Breach.

141.   Plaintiff Niessing has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains in the possession of Defendants, is protected, and safeguarded from future data breaches. Absent Court intervention, Plaintiff Niessing's Private Information will be wholly unprotected and at-risk of future data breaches.

## V.   CLASS ACTION ALLEGATIONS

142.   Plaintiff incorporates by reference all preceding factual paragraphs as if fully restated here.

143.   Plaintiff brings this action against Defendants on behalf of himself, and all other individuals similarly situated under Federal Rule of Civil Procedure 23. Plaintiff asserts all claims on behalf of a nationwide class (the "Class") defined as follows:

**All individuals residing in the United States whose Private Information was compromised in the Data Breach.**

144.   Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and members of their immediate families and their judicial staff members.

145.   Plaintiff reserves the right to amend or modify the above Class definition or to propose subclasses in subsequent pleadings and motions for class certification.

146.   Plaintiff anticipates the issuance of notice setting forth the subject and nature of the instant action to the proposed Class. Upon information and belief, Defendants' own business records or electronic media can be utilized for the notice process.

147.   The proposed Class meets the requirements of Federal Rule of Civil Procedure 23.

148.   **Numerosity:** The proposed Class is so numerous that joinder of all members is impracticable. While the exact number is unknown to Plaintiff, it is believed that the Breach affected millions of individuals whose Private Information was stored and maintained within TriZetto's network and systems. The identities of Class members are

ascertainable through Defendants' records, Class members' records, publication notice, self-identification, and other means

149.   **Typicality:** Plaintiff's claims are typical of the claims of the Class because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiff and all members of the Class were injured by the same wrongful acts, practices, and omissions committed by Defendants, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that gives rise to the claims of all Class Members.

150.   **Adequacy:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the Class. Plaintiff has retained counsel competent and highly experienced in data breach class action litigation, and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

151.   **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for individual members of the Class to effectively redress Defendants' wrongdoing. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all

parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

152. **Commonality and Predominance:** Defendants engaged in a common course of conduct toward Plaintiff and Class Members, in that Plaintiff's and Class Members' Private Information was stored on the same network and unlawfully accessed in the same way. There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

    a. Whether Defendants engaged in the wrongful conduct alleged herein;

    b. Whether Defendants owed a duty to Plaintiff and Class Members to adequately protect their Private Information;

    c. Whether Defendants breached its duty to Plaintiff and Class Members to adequately protect their Private Information;

    d. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    e. Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

f.  Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

g.  Whether Defendants knew or should have known that its computer and network security systems, or the computer and network security systems of its vendors, were vulnerable to cyberattacks;

h.  Whether Defendants conduct, including its failure to act, resulted in or was the proximate cause of the Data Breach;

i.  Whether Defendant TriZetto was negligent in permitting unencrypted Private Information belonging to millions of individuals to be stored within its network;

j.  Whether Defendant TriZetto was negligent in failing to adhere to reasonable data retention policies;

k.  Whether Defendant TriZetto breached implied contractual duties to Plaintiff and the Class to use reasonable care in protecting their Private Information;

l.  Whether Defendant TriZetto was unjustly enriched by unlawfully retaining a benefit conferred upon it by Plaintiff and Class Members;

m.  Whether Defendant TriZetto should have discovered the Data Breach sooner;

n.  Whether Defendant TriZetto failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and the Class;

o.  Whether Defendant TriZetto continues to breach duties owed to Plaintiff and the Class;

p.  Whether Plaintiff and the Class suffered injuries as a proximate result of Defendants' negligent actions or failures to act;

q.  Whether Defendant TriZetto was negligent in selecting, supervising, and/or monitoring vendors;

r.  Whether Plaintiff and the Class are entitled to recover damages, equitable relief, and other relief; and

s.  Whether Defendants' actions alleged herein constitute gross negligence, and whether Plaintiff and Class Members are entitled to punitive damages.

153.  Defendants have acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class wide basis.

154.  Finally, all members of the proposed Class are readily ascertainable. Defendants have access to Class Members' names and addresses.

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

155.  Plaintiff re-alleges and incorporates by reference all preceding factual paragraphs as though fully set forth herein.

156.  Defendant TriZetto gathered and stored the Private Information of Plaintiff

and Class members as part of its business practices.

157.   Upon accepting and storing Plaintiff's and Class Members' Private Information on its computer systems and networks, Defendants undertook and owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their Private Information from unauthorized access and disclosure.

158.   Defendants owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its computer systems and networks, and the personnel responsible for them, adequately protected the Private Information.

159.   Defendants' duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

160.   Defendants had full knowledge of the sensitivity of the Private Information in its possession and the types of harm that Plaintiff and Class Members could and would suffer if the Private Information was wrongfully accessed or disclosed. Plaintiff and Class Members were therefore the foreseeable victims of any inadequate data security practices.

161.   Defendants' duty to implement and maintain reasonable data security practices arose as a result of the special relationship that exists between Defendants and consumers, which is recognized by laws and regulations, including, but not limited to, HIPAA, the FTC Act, and common law.

162. Defendant TriZetto was in a superior position to ensure its data security practices were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class Members from a data breach.

163. Defendants knew Plaintiff and Class Members relied on it to protect their Private Information. Plaintiff and Class Members were not in a position to assess the data security practices used by Defendants. Because they had no means to identify Defendants' security deficiencies, Plaintiff and Class Members had no opportunity to safeguard their Private Information from cybercriminals. Defendants exercised control over the Private Information stored on its systems and networks; accordingly, Defendants were best positioned and most capable of preventing the harms caused by the Data Breach.

164. Defendants were aware, or should have been aware, of the fact that cybercriminals routinely target healthcare entities through cyberattacks in an attempt to steal valuable Private Information. In other words, TriZetto and Cognizant knew of a foreseeable risk to its data security systems but failed to implement reasonable security measures.

165. Defendants owed Plaintiff and Class Members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing their Private Information, including taking action to reasonably safeguard or delete such data and providing notification to Plaintiff and Class Members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

43

166.    TriZetto's and Cognizant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to such risk, or defeats protections put in place to guard against that risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B.

167.    Defendants had a duty to protect and safeguard the Private Information of Plaintiff and the Class from unauthorized access and disclosure. Additionally, Defendants owed Plaintiff and the Class a duty:

a.    to exercise reasonable care in designing, implementing, maintaining, monitoring, and testing its networks, systems, protocols, policies, procedures and practices to ensure that Plaintiff' and Class Members' Private Information was adequately secured from impermissible release, disclosure, and publication;

b.    to protect Plaintiff' and Class Members' Private Information by using reasonable and adequate data security practices and procedures;

c.    to implement processes to quickly detect a data breach, security incident, or intrusion involving its networks and servers; and

d.    to promptly notify Plaintiff and Class Members of any data breach, security incident, or intrusion that affected or may have affected their Private Information.

168. Defendants breached their duties, and thus were negligent, by failing to use reasonable measures to protect Plaintiff' and Class Members' Private Information.

169. The specific negligent acts and omissions committed by Defendants include, but are not limited to:

    a.    Failing to adopt, implement, and maintain adequate data security measures to safeguard Plaintiff's and Class Members' Private Information;

    b.    Failing to adequately monitor the security of its networks and systems;

    c.    Failing to ensure its email systems had plans in place to maintain reasonable data security safeguards;

    d.    Failing to implement and maintain adequate mitigation policies and procedures;

    e.    Allowing unauthorized access to Plaintiff's and Class Members' Private Information;

    f.    Failing to detect in a timely manner that Plaintiff's and Class Members' Private Information had been compromised; and

    g.    Failing to timely notify Plaintiff and Class Members about the Data Breach so they could take appropriate steps to mitigate the potential for identity theft and other damages.

170.   Defendants' willful failure to abide by its duties to Plaintiff and Class Members was wrongful, reckless, and grossly negligent considering the foreseeable risks and known threats.

171.   It was foreseeable that Defendants' failure to use reasonable measures to protect Plaintiff's and Class Members' Private Information would result in injury to Plaintiff and Class Members.

172.   Furthermore, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the healthcare industry.

173.   As a direct and proximate result of Defendants' negligent conduct, including, but not limited to, their failure to implement and maintain reasonable data security practices and procedures as described above, Plaintiff and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

174.   Through Defendants' acts and omissions described herein, including but not limited to Defendants' failure to protect the Private Information of Plaintiff and Class Members from being stolen and misused, Defendants unlawfully breached its duty to use reasonable care to adequately protect and secure the Private Information of Plaintiff and Class Members while it was within Defendants' possession and control.

175.   Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiff and Class Members, Defendant TriZetto prevented Plaintiff and Class Members from taking meaningful, proactive steps to secure their Private Information and mitigate the impact of the Data Breach.

176. Plaintiff and Class Members could have taken actions earlier had they been timely notified of the Data Breach.

177. Plaintiff and Class Members could have enrolled in credit monitoring, instituted credit freezes, and changed their passwords, among other things, had they been alerted to the Data Breach more quickly.

178. Plaintiff and Class Members suffered harm from Defendants' delay in notifying them of the Data Breach.

179. As a direct and proximate result of Defendants' conduct, including, but not limited to, Defendants' failure to implement and maintain reasonable data security practices and procedures, Plaintiff and Class Members have suffered or will suffer injury and damages, including, but not limited to: (i) the loss of the opportunity to determine for themselves how their Private Information is used; (ii) the publication and theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, fraud, and/or unauthorized use of their Private Information, including the need for substantial credit monitoring and identity protection services for an extended period of time; (iv) lost time and opportunity costs associated with efforts expended to address and mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest and recover from fraud and identity theft; (v) costs associated with placing freezes on credit reports and password protections; (vi) anxiety, emotional distress, loss of privacy, and other economic and non-economic losses; (vii) the continued risk to their Private

Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants failed to undertake appropriate and adequate measures to protect the Private Information in its continued possession; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised Private Information for the rest of their lives. Thus, Plaintiff and the Class are entitled to damages in an amount to be proven at trial.

180. The damages Plaintiff and the Class have suffered and will suffer (as alleged above) were and are the direct and proximate result of Defendants' negligent conduct.

181. Plaintiff and the Class have suffered cognizable injuries and are entitled to actual and punitive damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
## NEGLIGENCE *PER SE*
## (On Behalf of Plaintiff and the Class)

182. Plaintiff re-allege and incorporate all preceding factual paragraphs as though fully set forth herein.

183. Defendants had a duty to implement and maintain reasonable data security practices pursuant to Section 5 of the FTC Act, 15 U.S.C. § 45(a), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect sensitive and confidential data.

184.   The FTC Act prohibits "unfair practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect PII/PHI. The FTC publications and orders described above also formed part of the basis of Defendants' duty in this regard.

185.   TriZetto solicited, collected, stored, and maintained Plaintiff' and Class Members' Private Information as part of its regular business, which affects commerce.

186.   Defendants violated the FTC Act by failing to use reasonable measures to protect Plaintiff' and Class Members' Private Information and by failing to comply with applicable industry standards, as described herein.

187.   Defendants breached their duties to Plaintiff and the Class under the FTC Act by failing to implement and maintain fair, reasonable, and adequate data security practices to safeguard Plaintiff' and Class Members' Private Information, and by failing to provide prompt notice of the Data Breach without unreasonable delay.

188.   Defendants' multiple failures to comply with applicable laws and regulations constitute negligence *per se*.

189.   Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

190.   The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, like Defendants, that fail to employ reasonable data security measures and

avoid unfair and deceptive practices, causing the same harm as that suffered by Plaintiff and the Class.

191.    Defendants breached their duties to Plaintiff and the Class by unreasonably delaying and failing to provide notice of the Data Breach expeditiously and/or as soon as practicable to Plaintiff and the Class.

192.    Defendants' violations of the FTC Act constitute negligence *per se*.

193.    As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and the Class have suffered, and continue to suffer, damages arising from the Data Breach, as alleged above.

194.    The injury and harm that Plaintiff and Class members suffered (as alleged above) was the direct and proximate result of Defendants' negligence *per se*.

195.    Defendants also had a duty to use reasonable security measures under HIPAA, which requires covered entities that handle and/or store medical records of patients, like Defendants, to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1). Some or all of the medical information at issue in this action constitutes "protected health information" within the meaning of HIPAA.

196.    Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, *et seq*. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to

streamline the standards for handling Private Information. HHS subsequently promulgated multiple regulations under the authority of the Administrative Simplification provisions of HIPAA. These rules include 45 C.F.R. § 164.304, 45 C.F.R. § 164.306(a)(1-4), 45 C.F.R. § 164.312(a)(1), 45 C.F.R. § 164.308(a)(1)(i), 45 C.F.R. § 164.308(a)(1)(ii)(D), and 45 C.F.R. § 164.530(b).

197.   Defendants' violations of HIPAA constitute negligence *per se*.

198.   Plaintiff and the Class are within the class of persons HIPAA was intended to protect.

199.   The harm that occurred as a result of the Data Breach is the type of harm HIPAA was intended to guard against.

200.   Defendants' duty to use reasonable care in protecting Plaintiff's and Class Members' Private Information arose not only as a result of the statutes and regulations described above, but also because Defendants are bound by industry standards to protect and secure Private Information in its possession and control.

201.   As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual instances of identity theft or fraud; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, fraud, and/or unauthorized use of their Private Information; (iv) lost time and opportunity costs associated with efforts to mitigate the actual and future consequences of the Data Breach, including, but not limited to, time and

resources spent researching how to prevent, detect, contest, and recover from fraud and identity theft; (v) costs associated with placing or removing freezes on credit reports; (vi) the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the ongoing impact of the Data Breach for the remainder of the lives of Plaintiff and the Class.

202. Defendants reasonably knew, or should have known, of the risk of harms to Plaintiff and Class Members in an event of a breach and exfiltration of Private Information.

203. Additionally, as a direct and proximate result of Defendants' negligence *per se*, Plaintiff and the Class have suffered and will suffer imminent and impending injuries arising from the increased risk of future fraud and identity theft.

204. As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages.

205. Plaintiff and the Class have suffered injury and are entitled to damages in amounts to be proven at trial.

**THIRD CAUSE OF ACTION**
**BREACH OF IMPLIED CONTRACT**
**<u>(On Behalf of Plaintiff and the Class)</u>**

206. Plaintiff re-alleges and incorporates all preceding factual paragraphs as though fully set forth herein.

52

207. Plaintiff and Class members were required to provide their Private Information to Defendants in connection with the services Defendants clients, including Blue Cross Blue Shield Rhode Island.

208. Defendants solicited and accepted possession of Plaintiff' and Class Members' Private Information.

209. In turn, Defendants impliedly promised and represented to protect Plaintiff' and Class members' Private Information through adequate data security measures, including through its privacy policies.

210. In delivering, directly or indirectly, their Private Information to Defendants and paying for healthcare services, Plaintiff and Class Members intended and understood that Defendants would adequately safeguard their Private Information.

211. Plaintiff and Class Members reasonably expected that the Private Information they entrusted to Defendants, in order to receive medical services, would remain confidential and would not be shared or disclosed to criminal third parties.

212. Plaintiff and Defendants had a mutual understanding that Defendants would implement and maintain adequate and reasonable data security practices and procedures to protect Plaintiff's and Class Members' sensitive Private Information. Plaintiff and Defendants also shared an expectation and understanding that Defendants would not share or disclose, whether intentionally or unintentionally, the sensitive Private Information in its possession and control.

213.   Based on Defendants' representations, legal obligations, and acceptance of Plaintiff's and Class Members' Private Information, Defendants had a duty to safeguard the Private Information in its possession through the use of reasonable data security practices.

214.   When Plaintiff and Class Members paid money and provided their Private Information to Defendants and/or their healthcare providers, either directly or indirectly, in exchange for goods or services, they entered into implied contracts with Defendants.

215.   Defendants entered into implied contracts with Plaintiff and the Class under which Defendants agreed to comply with their statutory and common law duties to safeguard and protect Plaintiff's and Class Members' Private Information and to timely notify Plaintiff and Class Members of a data breach.

216.   The implied promise of confidentiality includes consideration beyond those pre-existing duties owed under Section 5 of the FTC Act, HIPAA, and other state and federal regulations. The additional consideration included implied promises to take adequate steps to comply with specific industry data security standards and FTC guidelines on data security.

217.   The implied promises include, but are not limited to: (i) taking steps to ensure any agents or vendors who are granted access to Private Information protect the confidentiality of that information; (ii) taking steps to ensure that Private Information in the possession and control of Defendants, its agents, and/or vendors is restricted and limited to achieve an authorized medical purpose; (iii) restricting access to qualified and trained

agents and/or vendors; (iv) designing and implementing appropriate retention policies to protect the Private Information from unauthorized access and disclosure; (v) applying or requiring proper encryption of the Private Information; (vi) requiring multifactor authentication for access to the Private Information; and (vii) other steps necessary to protect against foreseeable data breaches.

218.   Plaintiff and Class Members (or their doctors and healthcare providers) would not have entrusted their Private Information to Defendants in the absence of such implied contracts.

219.   Defendants recognized that Plaintiff's and Class Members' Private Information is highly sensitive and must be protected, and that this protection was of material importance to Plaintiff and Class Members.

220.   Had Defendants disclosed to Plaintiff and Class Members (or their doctors and healthcare providers) that TriZetto did not have adequate data security practices to secure their Private Information, Plaintiff and Class Members (or their doctors and healthcare providers) would not have provided their Private Information to Defendants.

221.   Plaintiff and Class Members (or their doctors and healthcare providers) fully performed their obligations under the implied contracts with Defendants.

222.   Defendants breached the implied contracts with Plaintiff and Class Members by failing to safeguard Plaintiff's and Class Members' Private Information and by failing to provide them with timely and accurate notice of the Data Breach.

223. As a direct and proximate result of Defendants' breach of the implied contracts, Plaintiff and Class Members have suffered damages, including foreseeable consequential damages that Defendants knew about when it solicited and collected Plaintiff's and Class Members' Private Information.

224. Alternatively, Plaintiff and Class Members were the intended beneficiaries of data protection agreements entered into between Defendants and healthcare and medical insurance providers.

225. Plaintiff and the Class have suffered injuries as described herein, and are entitled to actual and punitive damages, statutory damages, and reasonable attorneys' fees and costs, in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION
### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

226. Plaintiff re-alleges and incorporates all preceding factual paragraphs as though fully set forth herein.

227. Plaintiff alleges this claim in the alternative to his breach of implied contract claim.

228. Plaintiff and Class Members conferred a benefit on Defendants by way their Private Information to Defendants as part of Defendants' business.

229. Defendants required Plaintiff's and Class Members' Private Information to conduct its business and generate revenue, which it could not do without collecting and maintaining Plaintiff's and Class Members' Private Information.

230. By conferring their Private Information to Defendants, directly or indirectly, Plaintiff and Class Members reasonably understood Defendants would be responsible for securing their Private Information from unauthorized access and disclosure.

231. Defendants additionally benefited from Plaintiff's and Class Members' Private Information in that it received payment from its Clients for the specific purpose of managing such data.

232. Upon information and belief, Defendants funds their data security measures entirely from its general revenue, including from money it makes based on protecting Plaintiff' and Class Members' Private Information.

233. Plaintiff and Class Members paid and/or their healthcare providers a certain sum of money, which was used to fund data security via contracts with Defendants.

234. As such, a portion of the payments made by or on behalf of Plaintiff and the Class was to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendants.

235. There is a direct nexus between money paid to Defendants and the requirement that Defendants keep Plaintiff's and Class Members' Private Information confidential and protected from unauthorized access and disclosure.

236. Protecting the Private Information of Plaintiff and Class Members is integral to Defendants' business. Without their Private Information, Defendants would be unable to provide services comprising Defendants' core business.

237. Plaintiff's and Class Members' Private Information have monetary value.

238.   Plaintiff and Class Members directly and indirectly conferred a monetary benefit on Defendants. They indirectly conferred a monetary benefit on Defendants by purchasing goods and/or medial services from entities that contracted with Defendants, and from which Defendants received compensation to protect certain data. Plaintiff and Class Members directly conferred a monetary benefit on Defendants by supplying their Private Information, from which Defendants derive their business, and which should have been protected with adequate data security.

239.   Defendants solicited, collected, stored, and maintained Plaintiff's and Class Members' Private Information, and as such, Defendants had direct knowledge of the monetary benefits conferred upon it by Plaintiff and the Class. Defendants profited from these transactions and used Plaintiff's and Class Members' Private Information for business purposes.

240.   Indeed, Plaintiff and Class Members who were customers of Defendants' Clients provided monetary payment to Defendants and therefore conferred a benefit unto Defendants.

241.   Defendants appreciated that a monetary benefit was being conferred upon it by Plaintiff and Class Members and accepted that monetary benefit.

242.   Defendants enriched themselves by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendants instead calculated to increase their own profit at the expense

of Plaintiff and Class Members by utilizing cheaper, ineffective security measures and diverting those funds to its own profit, while receiving payment from their Clients to process, manage, and store Private Information.

243. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' decision to prioritize their own profits over the requisite security and the safety of their Private Information.

244. Defendants failed to provide reasonable security, safeguards, and protections to the Private Information of Plaintiff and Class Members, and as a result, Defendants were overpaid.

245. Under the facts and circumstances outlined above, however, it is inequitable for Defendants to retain that benefit without payment of the value thereof.

246. Under the principles of equity and good conscience, Defendants should not be permitted to retain the monetary benefit belonging to Plaintiff and Class Members, because Defendants failed to implement appropriate data management and security measures.

247. Defendants acquired Plaintiff's and Class Members' Private Information through inequitable means in that it failed to disclose its inadequate data security practices, as previously alleged.

248. If Plaintiff and Class Members knew that Defendants had not secured their Private Information, they would not have allowed Defendants to collect their Private Information.

249.   Plaintiff and Class Members have no adequate remedy at law.

250.   As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered or will suffer injury, including, but not limited to: (i) actual identity theft and fraud; (ii) loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, fraud, and/or unauthorized use of their Private Information; (v) lost time and opportunity costs associated with efforts to mitigate the actual and future consequences of the Data Breach, including, but not limited to, effort and time spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fails to undertake appropriate and adequate measures to protect the Private Information in their continued possession; and/or (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

251.   As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

252.   Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, all gains that they unjustly received.

**FIFTH CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**
**(On Behalf of Plaintiff and the Class Against Defendants)**

253.   Plaintiff re-alleges and incorporates all preceding factual paragraphs as though fully set forth herein.

254.   In light of the special relationship between Defendants, as a custodian of Private Information and medical records, and Plaintiff and Class Members, Defendants became a fiduciary by undertaking a guardianship of Plaintiff's and Class Members' Private Information.

255.   A custodian of patients' medical records has a fiduciary duty to not disclose a patient's medical information.

256.   Defendants became a fiduciary, created by its undertaking and guardianship of Plaintiff's and the Class Members' Private Information, to act primarily for the benefit of Plaintiff and Class Members.

257.   This duty included the obligation and responsibility to:

   a.   safeguard Plaintiff's and Class Members' Private Information;

   b.   timely detect and notify Plaintiff and the Class in the event of a data breach;

   c.   only utilize vendors with adequate data security infrastructure, procedures, and protocols;

   d.   establish and implement appropriate oversight and monitoring procedures for the activities of its vendors.

61

258.   Plaintiff and the other Class members gave Defendants their Private Information believing that Defendants would protect that information. Plaintiff and the other Class members would not have provided Defendants with this information had they known it would not be adequately protected. Defendants' acceptance and storage of Plaintiff's and the other Class members' Private Information created a fiduciary relationship between Defendants on the one hand, and Plaintiff and the other Class members, on the other hand. In light of this relationship, Defendants must act primarily for the benefit of Plaintiff and Class members, which includes

259.   Defendants knowingly undertook the responsibility and duties related to the possession of Plaintiff's and Class Members' Private Information, for the benefit of Plaintiff and Class Members.

260.   Defendants had a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of their relationship with them.

261.   Defendants breached the fiduciary duties it owed to Plaintiff and Class Members by failing to protect Plaintiff's and Class Members' Private Information.

262.   Defendants further breached the fiduciary duties it owed to Plaintiff and Class Members by failing to timely notify and/or warn Plaintiff and Class Members of the Data Breach.

263.   As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiff and Class Members have suffered or will suffer concrete injury, including, but not limited to: (i) actual misuse of their Private Information in the form of identity theft

and fraud; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use, and/or viewing of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with efforts to mitigate the actual and future consequences of the Data Breach, including, but not limited to, time and effort spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

264.   As a direct and proximate result of Defendants' breach of its fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

**SIXTH CAUSE OF ACTION**
**BREACH OF THIRD-PARTY BENEFICIARY CONTRACT**
**(On Behalf of Plaintiff and the Class Against Defendant TriZetto)**

265.   Plaintiff re-alleges and incorporates all preceding factual paragraphs as though fully set forth herein.

266.   Defendant TriZetto entered into contracts, written or implied, with its

Clients, including Blue Cross Blue Shield Rhode Island, to perform services. Upon information and belief, these contracts are virtually identical between and among Defendant TriZetto and its Clients around the country whose patients, including Plaintiff and Class Members, were affected by the Data Breach.

267. In exchange, Defendant TriZetto agreed, in part, to implement adequate security measures to safeguard the Private Information of Plaintiff and the Class.

268. These contracts were made expressly for the benefit of Plaintiff and the Class, as Plaintiff and Class Members were the intended third-party beneficiaries of the contracts entered into between Defendant TriZetto and its Clients. Defendant TriZetto knew that if it were to breach these contracts with its Clients, its Clients' patients—Plaintiff and Class Members—would be harmed.

269. Defendant TriZetto breached the contracts it entered into with its Clients by, among other things, failing to (i) use reasonable data security measures, (ii) implement adequate protocols and employee training sufficient to protect Plaintiff Private Information from unauthorized disclosure to third parties, and (iii) promptly and adequately detecting the Data Breach and notifying Plaintiff and Class Members thereof.

270. Plaintiff and the Class were harmed by Defendant TriZetto breach of its contracts with its Clients, as such breach is alleged herein, and are entitled to the losses and damages they have sustained as a direct and proximate result thereof.

271. Plaintiff and Class Members are also entitled to their costs and attorney's fees incurred in this action.

## SEVENTH CAUSE OF ACTION
## VIOLATIONS OF MISSOURI MERCHANDISING PRACTICES ACT,
## MO. REV. STAT. § 407.010 et seq.
### (On behalf of Plaintiff and the Class)

272. The preceding factual statements and allegations are incorporated herein by reference.

273. RSMo. 407.020 prohibits the use of any "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce"…

274. An "unfair practice" is defined by Missouri law, 15 CSR 60-8.020, as any practice which:

(A) Either-

1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or

2. Is unethical, oppressive or unscrupulous; and

(B) Presents a risk of, or causes, substantial injury to consumers.

275. An "unfair practice is defined by Missouri law,

15 CSR 60-8.020 (1)(B) provides that an "Unfair Practice in General" is

(1)   An unfair practice is any practice which –

(A)   Either –

1.   Offends any public policy as it has been established by the

Constitution, statutes or common law of this state, or by the Federal Trade

65

Commission, or its interpretive decisions; or

2.    Is unethical, oppressive or unscrupulous; and

(B) Presents a risk of, or causes, <u>substantial injury to consumers</u>.

15CSR 60-8.040 provides that an "Unfair Practice is:

An unfair practice for any person in connection with the advertisement or sale of merchandise to violate the duty of good faith in solicitation, negotiation and performance, or in <u>any manner fail to act in good faith</u>.

276.    Plaintiffs and the Class as well as Defendants are "persons" within the meaning of section 407.010 (5).

277.    Merchandise is defined by the MMPA, to include the providing of "services" and, therefore, encompasses Healthcare services.  Healthcare services are a good.

278.    Efforts to maintain the privacy and confidentiality of medical records are part of the healthcare services associated with a good.

279.    Maintenance of medical records are "merchandise" within the meaning of section 407.010(4).

280.    Plaintiffs' goods and services purchased from Defendants were for "personal, family or household purposes" within the meaning of the Missouri Merchandising Practices Missouri Revised Statutes.

281.    As set forth herein, Defendants' acts, practices and conduct violate section 407.010(1) in that, among other things, Defendants have used and/or continue to use unfair

practices, concealment, suppression and/or omission of material facts in connection with the advertising, marketing, and offering for sale of services associated with healthcare services. Such acts offends the public policy established by Missouri statute and constitute an "unfair practice" as that term is used in Missouri Revised Statute 407.020(1).

282. Defendants' unfair, unlawful and deceptive acts, practices and conduct include: (1) representing to its patients that it will not disclose their sensitive personal health information to an unauthorized third party or parties; (2) failing to implement security measures such as securing the records in a safe place; and (3) failing to train personnel.

283. Defendants' conduct also violates the enabling regulations for the MMPA because it: (1) offends public policy; (2) is unethical, oppressive and unscrupulous; (3) causes substantial injury to consumers; (4) it is not in good faith; (5) is unconscionable; and (6) is unlawful. *See* Mo Code Regs. Ann tit. 15, Section 60-8.

284. As a direct and proximate cause of Defendants' unfair and deceptive acts, Plaintiffs suffered damages in that they (1) paid more for medical record privacy protections than they otherwise would have, and (2) paid for medical record privacy protections that they did not receive. In this respect, Plaintiffs have not received the benefit of the bargain and have suffered an ascertainable loss.

285. Plaintiffs seek actual damages for all monies paid to Defendants in violation of the MMPA. In addition, Plaintiffs seek attorneys' fees.

## VII.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff and the Class pray for judgment against Defendants as follows:

a.   For an order certifying this action as a Class Action under Federal Rule of Civil Procedure 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff are proper representatives of the Class requested herein;

b.   For a judgment in favor of Plaintiff and the Class, awarding them appropriate monetary relief, including compensatory damages, punitive damages, nominal damages, attorneys' fees, expenses, costs, and such other and further relief as is just and proper;

c.   For an order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d.   For an order requiring Defendants to pay the costs involved in notifying the Class about the judgment and administering the claims process;

e.   For a judgment in favor of Plaintiff and the Class, awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

f.   For an award of such other and further relief as this Court may deem just and proper.

## VIII.  DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on any and all issues raised in this Class

Action Complaint so triable as of right.

Dated:  December 19, 2025                         Respectfully submitted,

                                                 */s/ Maureen M. Brady*
                                                 Maureen M. Brady   MO#57800
                                                 **McSHANE & BRADY, LLC**
                                                 4006 Central Street
                                                 Kansas City, MO 64111
                                                 Telephone: (816) 888-8010
                                                 Facsimile: (816) 332-6295
                                                 mbrady@mcshanebradylaw.com


                                                 William B. Federman*
                                                 Jessica A. Wilkes*
                                                 (*pro hac vice* forthcoming)
                                                 **FEDERMAN & SHERWOOD**
                                                 10205 N. Pennsylvania Ave.
                                                 Oklahoma City, OK 73120
                                                 T: (405) 235-1560
                                                 E: wbf@federmanlaw.com
                                                 E: jaw@federmanlaw.com

                                                 *Attorneys for Plaintif and the Proposed
                                                 Class*